MOORE FILTER CO. v. TONOPAH–BELMONT DEVELOPMENT CO.

(District Court, D. New Jersey. February 24, 1912.)

PATENTS (§ 328*)—INFRINGEMENT—FILTERING PROCESS.
  The Moore patent, No. 764,486, for a filtering process, for recovering the metal contained in metal bearing slimes, claims 4, 5, and 10 construed, and *held* not infringed by what is known as the "Butters filter."

In Equity. Suit by the Moore Filter Company against the Tonopah-Belmont Development Company for infringement of two patents issued to George Moore, No. 748,088, granted December 29, 1903, for improvement in filtering system, and No. 764,486, granted July 5, 1904, for improvement in filtering processes. On final hearing. Decree for defendant.

Gifford & Bull, for complainant.
William H. Kenyon and Harold Binney, for defendant.

RELLSTAB, District Judge. The complainant by mesne assignments is the owner of the letters patents No. 748,088, for improvement in filtering system, and No. 764,486, for improvement in filtering processes issued to George Moore December 29, 1903, and July 5, 1904, respectively. The bill alleges that the inventions covered by said letters patents are capable of conjoint, as well as separate, use, and that the defendant so used them. At the close of complainant's prima facie case, the charge of infringement based on the apparatus patent (No. 748,088) was abandoned. The defenses are the usual ones of invalidity and infringement.

The patentee in his application for the process patent, No. 764,486, states that:

"My present invention relates to the filtration of metal bearing slimes and the like; and it consists of certain novel processes particularly pointed out in the claims."

The patentee illustrates a set of elements which he says may be employed for carrying out his process. Figures 1 and 3 of which are here given.

Fig. 1 represents a longitudinal section through a tank illustrating a filtering device therein capable of carrying out such process, and Fig. 3 represents a diagrammatic view of elements ordinarily employed for carrying out the same process. With reference to the carrying out of his process the patent states:

"Although in the accompanying drawings I have disclosed a particular set of elements capable of carrying out my improved process, it will be understood that the said process may as well be carried out by any other elements capable of completing the steps to be described; the disclosure in the drawings being given as one illustration of complete means for carrying out the process.

"In carrying out the process with the means disclosed in the accompanying drawings adapted particularly for use in connection with the slimes of precious metals, I introduce a solution to be filtered into a suitable tank *1*, in which I place a filtering device or means *2*, in the present instance made up of a series of filter plates communicating with a common discharge tube *3*. A flexible or other suitable tube *4* connects the tube *3* with any preferred form of hydraulic pump *5* and compressed air pump *5a*, and the filtering means *2* is permitted to remain within the tank *1* until the solid matter within the liquid being filtered has coated the walls of the filtering device to the desired thickness—say, for example, about three-quarters of an inch or more in most cases, but varying somewhat with the character of the slimes which are being handled—and then the same is lifted, as by pulley-and-cable mechanisms *6*, out of and away from the tank, and the pump *5* stopped and pump *5a* operated so as to apply air pressure to the back of the canvas or to pass a current of air or cleansing current in an opposite direction to the movement of the liquid in the prior step, whereby the solid matter collected by the filtering device *2* will be discharged therefrom. However, this cleansing step of the process need not be taken until an intermediate auxiliary step has been performed, which consists in introducing the element *2*, after having been coated with the solids, into a tank *7* of water, the drawing or sucking operation of pump *5* being continued while the element *2* is being subjected to the said water bath. When this step is employed, the next succeeding is the operation just described. It will be obvious that the water bath may be employed or not, as desired, the same being preferable when the filter is used for filtering precious ores, the said step tending to wash out the remaining metal held in solution or solvent thereof within the solids coating the filtering device.

In order to effectively discharge the incrusted slimes from the filter by the agency of compressed air, it is important that the slimes be in the form of a compact layer of requisite resistance and of sufficient thickness, because otherwise, when the air pressure is applied, portions only of the slimes are blown off, thereby relieving or reducing the air pressure, and rendering it ineffective for the removal of those slimes which remain and necessitating the use of other means—such as scrapers, brushes, and washing—for the complete cleaning of the filter surface. This difficulty is wholly overcome in my process by immersing the filter into the tank containing the slimes in suspension and depositing them in the manner described, the effect of which is to automatically deposit the slimes in a homogeneous layer, as will be readily understood. Hence when the slimes have been thus deposited to the requisite thickness the compressed air does not blow holes in the layer of slimes and only partially cleans the filter, but it strips off the entire layer of slimes and effectively cleans the filter without the use of auxiliary cleansing mechanism."

Claims 4, 5, and 10 alone are involved in this suit. They are as follows:

"4. A filtering process comprising submerging a filtering medium in a material to be filtered, drawing the liquid being filtered from said material through said medium until a deposit of solids is formed upon the medium, removing the medium from the material being filtered, further impoverishing the solids by a cleansing operation, and removing the solids from the medium by passing a cleansing current through said medium.

"5. A filtering process comprising submerging a filtering medium in the material to be filtered, drawing the liquid being filtered from said material through said medium, removing the medium while continuing the drawing action, passing a cleansing fluid through the medium, and then passing a cleansing current through said medium."

"10. A filtering process comprising submerging a filtering medium a plurality of times in a plurality of baths including the material to be filtered, effecting a drawing action through the medium while thus submerging said medium, and then cleansing the medium."

The process is for the purpose of recovering the metal contained in metal-bearing slimes; i. e., a mixture of pulverized ore with a liquid solvent. The recovery of such metal is accomplished by separating the liquid in which the metal has become dissolved from the refuse solid matter in which the metal was originally imprisoned. The defendant uses what is known in the trade as "Butters Filter," and in defending on the ground of noninfringement it says that its device is taught by the prior art. A large number of patents have been cited against the claims in suit, the applicability of many of which depends upon the scope of the filtering art covered by such claims.

The claims in question by their terms are not limited to the metallurgical art, and are broad enough to embrace the filtration of liquids carrying any kind of solids, whether the purpose is to recover the liquid or the solids carried therein. The specifications, however, point to, if they do not expressly limit, the process to the treatment of metal bearing slimes. Several times while the application for this patent was pending in the Patent Office, the commissioner suggested that apt words be used to limit the process to the metallurgical art, and in which the applicant acquiesced by amending the descriptive part of his specifications; but in the final rewriting of the claims the particular claims in suit were so phrased as to enlarge the scope of such claims beyond such art. In my consideration of the claims, however, in view of my conclusion that the defendant's process does not infringe complainant's, I shall refer only to such cited patents as are limited or clearly analogous to the metallurgical art.

Neither complainant's nor defendant's process has anything to do with the preparation of the slimes to be filtered, nor with the precipitation of such metal from the metal-bearing liquid after its abstraction from the solids; but only with the recovery of such metal-bearing liquid from such solids.

The steps of Moore's process as set forth in the claims in suit, and read in the light of the specifications, are as follows:

Claim 4: (1) Submerging the filter medium in metal-bearing slimes, or the like. (2) Drawing the liquid from such material through such medium until a deposit of solids is formed upon the medium. (3) Removing the medium from such material. (4) Further impoverishing the solids by a cleansing operation. (5) Removing the solids from the medium by passing a cleansing current through such medium.

Claim 5: This has all the steps of claim 4, and, in addition, requires "continuing the drawing action" while the filtering medium is being removed.

Claim 10: (1) Submerging the filtering medium a plurality of times in a plurality of baths including the slimes to be filtered. (2) Effecting the drawing action through the medium while thus submerging it. (3) Cleansing the medium.

Obviously mechanical elements are necessary to carry out the steps of a mechanical process, and it may very well be that the carrying out of the several steps of such a process may be accomplished by different sets of mechanical elements. The complainant in the disclosed mechanical elements by which its process may be carried out and the defendant in carrying out its process use the leaf type filter, compris-

ing broadly a tank and filtering medium connected with tubes through which not only the metal bearing liquid is drawn out of the slimes, but also the wash water in the impoverishing step, and through which also, but in a reverse direction, a current of either air or water may be forced to loosen and discharge the cake adhering to the filter medium. The processes of both the complainant and defendant contemplate the submergence of the filter medium in the slimes, the drawing of the liquid contained in the slimes through the filter medium by suction applied to the interior of such medium, the adhering of the solids in the form of a cake upon the outer walls of such medium, a further submergence of the medium with its adhering cake in a body of wash water, and the subsequent discharge of the cake from the medium by a current forced in the reverse direction to that in which the liquid is drawn.

The two sets of mechanical elements differ, however, in the matter of the container where the washing of the cake is to be performed, and the place where the solids are to be discharged when the operation is completed. Complainant uses an extra tank for its washing step, using the filter medium as a conveyance to remove the cake of solids from the tank in which the filtering was performed to the tank in which the washing is to be done. Complainant also discharges the adhering solids outside of the tank in a semidry condition by a current of compressed air. The defendant uses but one tank in which it both filters and washes. Its filter medium remains stationary in the tank, the filtering material being drawn away from the medium, and the wash water run in and around the medium. It discharges the washed cake, not by a current of air, but of water, and not outside but inside the tank, and while the cake continues submerged in the water, and therefore not in a semidry condition, but as slimy pulp.

The question, so far as the infringement is concerned, is whether, notwithstanding this different use of similar mechanical elements, and the use of the natural element water instead of air in the reverse current referred to, the steps of the defendant's process, where they are not identical, are the equivalents of the steps of complainant's process. The steps: (1) Submerging; (2) drawing the liquid from the material through the filter and the formation of the solids from such material upon the filter; (3) removing the filter from the material; (4) if desirable, further impoverishing such deposit by a cleansing operation; and (5) removing the deposit from the filter by passing a cleansing current through it—were all old in the art when Moore applied for a patent for his process. Nicholas United States patent No. 619,211, February 7, 1899, clearly shows the second, third, and fifth steps. Symonds British patent No. 7,723, issued in 1900, shows the first and fourth, as well as some of the other steps in the Moore process. True, both Symonds and Nicholas were apparatus patents, but the several steps of these apparatus patents, if they are not merely the functions of the elements of such apparatuses, perform the several steps here enumerated. If such steps are only functions, then, of course, Moore's steps are but functional, and nonpatentable. The fact that Nicholas' and Symonds' apparatuses were rotary devices and Moore's apparatus was a movable leaf filter has no significance, as

we are concerned with the steps of a process, and not the mechanical elements by which they are performed. Symonds rotates the filter into the tank containing the material to be filtered. Moore inserts it perpendicularly into the tank containing such material. Butters filtering leaves, while of the Moore type, are stationery, the material to be filtered being run into the tank; following Thompson No. 713,717, November 18, 1902. If covering the filter with the slimes, as in Nicholas, is not submerging, rotating the filter into the material in the tank, as in Symonds, is. In principle there would seem to be no difference whether submergence as a step in a process is accomplished by covering the filter by pouring the slimes upon it, by rotating or dipping it into such material, or by pouring the material into a tank containing the filter, for the effect of each method is to cover the filtering medium.

The second step, drawing out the liquid and building up a cake of solids on the filter, is accomplished by all four in substantially the same way, viz., by suction applied to the interior of the filter—a well-known process—and shown in Thompson.

The third step, removing the medium from such material, is accomplished in substantially the same way by Nicholas, Symonds, and Moore. In Nicholas, the filter is rotated away from the material; in Symonds, the rotating filter is lifted out and away from the tank containing the material. Moore lifts it out and away from the tank by the use of pulleys, etc. Butters does not lift the medium out and away from the tank, but draws the material out of the tank and away from it and the filter. In all four a separation of the filter from the material to be filtered is accomplished.

The phrase of this claim, "removing the medium from the material being filtered," for the purpose of subsequent treatment, whether it be for discharging the cake or for its intermediate washing before being discharged, in view of the preceding phrase, "submerging a filtering medium in the material to be filtered," requires the removal of the filter out and away from the filtering material. If this meaning were inconsistent with the invention disclosed in the specifications, it would still have to be adhered to, because the inventor is required by the statute to "particularly point out and distinctly claim the part, improvement or combination which he claims as his invention."

The patent cannot be extended beyond the claim, even if it were manifestly narrower or broader than the invention disclosed. But in the patent in suit such meaning is not inconsistent with the disclosure in the specifications. The disclosure with reference to removing the medium is, "And then the same is lifted as by pulley and cable mechanisms 6 out of and away from the tank." Not only the apparatus referred to in the specifications as one set of mechanical elements by which the patented process can be carried out, but the written disclosures of the specifications show that the filtering medium by which these several steps are to be carried out is intended to be moved in accomplishing some of the steps of the process. The prior art disclosed both the stationary and movable filter; and Moore's process contemplates the movable type. The defendant's process, on the

other hand, contemplates and uses the stationary type. That the two steps removing the filtering medium out of and away from the tank containing the filtering material, and the withdrawing or removing of the filtering material away from the filtering medium and out of the tank wherein the medium remains, are not equivalents in the judgment of the Patent Office, is established by the grant of the patent to Cassel 774,349, November 8, 1904, copending in the office with Moore's, without declaring an interference. Cassel's application was filed during the period when Moore's patent was a forfeited application, but was not granted until several months after the grant to Moore on his renewed application. Claims 4 and 7 of Cassel show one of the steps of the process to be "withdrawing the nonadhering pulp from the tank." Clearly, if withdrawing the material from the medium and carrying it out of the tank were the equivalent of removing the medium from the material being filtered, and in which it had been submerged, an interference should have been declared pursuant to rule 96 of the Patent Office. The failure to do so raises the presumption that these two steps are not equivalents.

The fourth or further impoverishing step is substantially the same in Moore and Butters. Both employ the same step in washing the deposit that they do in withdrawing the liquid from the slimes, using only wash water—a barren solution—in the place of the slimes in performing such operation. Symonds also shows a washing step to further impoverish the deposits adhering to the filter, applying water to the surface of the solids adhering to the filter through a supply pipe with small jets, the water thus applied being drawn into such solids, displacing the original liquid. In Moore as well as Symonds this step is not necessary, but auxiliary. It may or may not be used, as desired, without interfering with the filtering process. Without the teaching of Symonds its use when desired would be obvious to one knowing the second or filtering step. It would require only the substitution of water, or other barren solution for the filtering material, and thereupon continue the same operation as shown in the second step, to accomplish this washing or impoverishing step.

The fifth step, removing the deposit from the filter by passing a cleansing current through it, is shown by Nicholas and Thompson. Both Moore and Nicholas use air under pressure to accomplish such removal; and Thompson says the solids may be detached by fluid being "forced in the reverse direction to that taken in filtering." Butters uses only water for such purpose, and accomplishes the discharge, regardless of how compact the layer of deposit is or how uniformly resistant it may be to the passage of such water. The building up of the incrusted slimes "in the form of a compact layer of requisite resistance and of sufficient thickness" disclosed by Moore as necessary to perform his last step, if it be any more than the necessary result of the drawing function through an upright filter, however essential it may be to make Moore's last step effective, is unimportant to the performance of Butters' method of discharging the cake. In Butters, the place where the deposit is removed from the filter, and

the character of the deposit when removed, as already noted, differ from Moore.

If Symonds' step in removing the filter from the material, etc.—Moore's third step—and Nicholas' and Thompson's steps in removing deposit from filter by the cleansing current—Moore's fifth step—do not anticipate Moore, then Moore cannot anticipate Butters' steps in the like operations. If Moore's third and fifth steps, respectively, were entitled to the dignity of a primary invention, Butters' third and fifth steps would be but their equivalents; but as Moore is at most but an improver, and, in view of the cited patents, necessarily limited in his range of equivalents, and as his said steps are at most but different modes of applying already known steps of removing the medium and the refuse solids from the medium, and Butters in such steps is but following the teachings of the prior art, Moore must be confined to the particular methods that he has employed in such operation.

As to the fifth claim. This claim, as already noted, differs from claim 4, only in that it requires "continuing the drawing action" while the filter with its adhering deposit is being conveyed away from the tank containing the slimes. The specifications' only reference to what takes place between the filtering and the washing is:

"And then the same is lifted as by pulley and cable mechanisms 6 out of and away from the tank and the pump 5 stopped and pump 5a operated so as to apply air pressure to the back of the canvas."

This is not such a "full, clear, concise, and exact" disclosure of when the drawing action is displaced by the reverse current as is required by the patent laws, and this step would be void for that reason. This step, however, is obvious to any one ordinarily skilled in this particular art called upon to maintain the integrity of the deposited cake on the filter while it is in the course of being transported. Moreover, it was disclosed by Solvay, No. 617,367, January 10, 1899, if not by Symonds. Furthermore, as in the consideration of claim 4, it was found that the defendant's process did not infringe the third step—i. e., "removing the medium from the material being filtered"—it is unnecessary to determine whether defendant uses such added operation, as its infringability is bound up with such third step.

As to the tenth claim. Read literally this claim calls for submerging the filter more than once in the bath of filtering material. There is no contention that the defendant so submerges. The contention is that the claim is to be read as if that limitation did not exist. This however, is not permissible. The claim measures the patentee's invention. He is bound by its terms. It is not ambiguous, and therefore there is no reason to resort to the specifications to construe its meaning. But, if the interpolation contended for by complainant were permitted, it would, in its reconstructed form, in legal effect, be only the same as claim 4, and bound by the conclusion herein reached in regard thereto.

It is doubtful that Moore's process, in any of its steps, is such an advance on the art as to amount to invention, but as I have reached

the conclusion that Butters does not infringe the steps, in which only there may be invention, I find it unnecessary to consider the validity of the patent.

The bill is dismissed on the ground of noninfringement.